UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KERRY W. KIDD,
     Petitioner,

v.                           Case No. 8:17-cv-3046-TPB-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,
     Respondent.
_____/

## ORDER DENYING AMENDED
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Kerry W. Kidd filed an Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 38.) Having considered the amended petition (*id.*), the response in opposition (Doc. 40), and Kidd's reply (Doc. 48), the amended petition is denied.

## Background

**A. Procedural Background**

A Florida jury convicted Kidd of sexual battery on a person less than 12 years of age. (Doc. 40-2, Ex. 2.) The state trial court sentenced him to life imprisonment. (Doc. 40-2, Ex. 3.) The state appellate court *per curiam* affirmed Kidd's conviction and sentence. (Doc. 40-2, Ex. 8.) The state appellate court also *per curiam* affirmed the denial of Kidd's motion for postconviction relief. (Doc. 40-2, Exs. 10-14.)

1

**B. Factual Background and Trial Testimony**[1]

In 2001, when E.B. was 10 years old, she moved from New Hampshire to Lakeland, Florida, with her mother and her stepfather, Petitioner Kerry Kidd. A short time later, Kidd began touching E.B.'s vagina under her clothes. This sometimes occurred after Kidd entered E.B.'s room while she slept. All instances of Kidd touching E.B.'s vagina took place before E.B. turned 12 years old. E.B. did not tell anyone what happened at the time because she was afraid of what would happen if she did.

In August 2005, when E.B. was 14 years old, her mother found a letter E.B. had written to her boyfriend. E.B.'s letter stated that she had trusted her boyfriend with the biggest secret of her life. E.B.'s mother asked E.B.'s older sister, B.B., to talk to her. E.B. told B.B. that Kidd had molested her. E.B. then told her mother, who called the police. The jury saw a video of E.B.'s forensic interview with a Child Protection Team worker, during which E.B. stated that Kidd touched her vagina.

B.B. testified at trial that when she was about 11 years old, the family lived in New Hampshire. She woke up one night to find Kidd touching her vagina. Kidd told her not to say anything to her mother. B.B. disclosed this

---

[1] This factual summary is based on the trial transcript and appellate briefs.

2

incident in 2005, shortly after E.B. told their mother that Kidd had sexually battered her.

B.B.'s friend, A.H., testified that she took a camping trip with B.B.'s family in New Hampshire when she was 11 years old. One night, A.H. testified, Kidd came into the tent where she was sleeping, got into her sleeping bag, and sexually assaulted her.

Kidd testified at trial and denied committing sexual battery. His defense was that the allegations had been fabricated to retaliate against him because E.B.'s mother was upset that Kidd had fathered a child with one of her friends. Kidd emphasized that E.B.'s accusations against him came several years after the abuse, but only a few weeks after E.B.'s mother learned about Kidd's child.

## Standards for Section 2254 Cases

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

4

fairminded disagreement."). Because this analysis involves the state court's ultimate ruling, as opposed to its specific reasons, a federal habeas court is not confined "to the precise justifications that a state court provides in its written opinion." *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1039-40 (11th Cir. 2022) (en banc).

In addition to showing entitlement to relief under this highly deferential review, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

## Ineffective Assistance of Counsel

Kidd alleges ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally

competent assistance." *Id.* at 690. But "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Kidd must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Kidd must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential." (internal quotation and citation omitted)). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state

6

court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## Discussion

**A. Ground One**

### 1. Introduction

Kidd argues that trial counsel was ineffective for failing to adequately investigate and present his theory that E.B. fabricated the accusations. His claim involves several letters that Kidd believes would have supported his defense.[2]

The first two letters were written by E.B. and B.B. when Kidd was in custody in New Hampshire. (Doc. 40-2, Ex. 15, pp. 190-91.) They each wrote to a New Hampshire judge asking for Kidd's release. (*Id.*) B.B.'s letter was not dated, but E.B.'s letter was dated November 2004, when she was 13 years old. (*Id.*, pp. 172, 190-91.) The other letters were written by E.B.'s mother and Kidd

---

[2] Respondent argues that this claim is untimely because it does not relate back to Kidd's original petition. The Court disagrees. Because Kidd's amended petition was filed after the one-year statute of limitations applicable to § 2254 petitions, each claim in Kidd's amended petition is untimely unless it relates back to a claim raised in the original, timely-filed petition. *See Mungin v. Sec'y Fla. Dep't of Corr.*, 89 F.4th 1308, 1322 (11th Cir. 2024). Kidd also alleged ineffective assistance regarding the letters in his original petition. Therefore, Ground One is timely.

7

in 2005, when Kidd remained in custody in New Hampshire. (*Id.*, pp. 193-95.) Kidd asserts that the state trial court excluded or limited evidence about the letters due to counsel's failure to disclose them to the State before trial.

The state court denied this claim of ineffective assistance of trial counsel, finding that counsel had not performed deficiently in her attempts to use the letters. (Doc. 40-2, Ex. 11, pp. 4-5.) The Court reviews the state court's denial of relief based on counsel's performance regarding (1) E.B.'s 2004 letter, (2) B.B.'s letter, and (3) the 2005 letters between Kidd and E.B.'s mother.[3]

### 2. E.B.'s 2004 Letter

Counsel attempted to use E.B.'s 2004 letter during her cross-examination of E.B. Counsel asked E.B. if she recalled writing a letter asking a judge to release Kidd. (Doc. 40-2, Ex. 15, p. 184.) The prosecutor made a hearsay objection and said that she had never seen E.B.'s prior statement. (*Id.*, pp. 184-85.) Counsel stated that she did not disclose the letters earlier because

---

[3] After filing his Amended Petition, Kidd filed a supplemental claim asserting that trial counsel was ineffective for not investigating and using recordings of phone calls between Kidd and E.B.'s mother, E.B., and B.B. when Kidd was incarcerated in New Hampshire. (Doc. 52.) Kidd does not explain why he did not raise this claim in the Amended Petition. He cannot proceed with piecemeal litigation. It also appears that this claim was unexhausted in state court, and Kidd does not establish a basis to excuse the resulting default of the claim. Moreover, Kidd has not shown that, under § 2254(e)(2), the Court can properly consider new evidence of the phone calls. *See Shinn v. Ramirez*, 596 U.S. 366 (2022). Kidd's supplemental claim does not warrant federal habeas relief.

she intended to use them only for impeachment, not to admit them as evidence. (*Id.*, pp. 186-87.)

Counsel argued that E.B.'s positive statements about Kidd in the 2004 letter—for instance, that she needed her dad and that he was the only reason she knew what a dad was— were inconsistent with E.B.'s trial testimony that Kidd had sexually battered her prior to 2004. (*Id.*, pp. 184-85, 202-03.) In other words, Kidd contends, the fact that E.B. wrote this letter of support for him in 2004 undermines the credibility of her testimony that he had sexually battered her beginning three years earlier, in 2001.

The state trial court found that the letter was not inconsistent with E.B.'s trial testimony. The state trial court noted that E.B. had not yet accused Kidd at the time she wrote the letter, and that it was not apparent when E.B. "discovered this stuff is inappropriate or it's having an effect on her . . . it very well could have been after this point in time." (*Id.*, pp. 206-07, 209.) The state trial court also noted that, as E.B.'s sisters, B.B. and K.B. (who did not testify at trial), wrote similar letters, "it doesn't appear that it's necessarily a spontaneous, hey, I want to write something to get my dad out of jail." (*Id.*, p. 206.) The court indicated that "[i]t could be financial obligations or other things that were making it hard on the family, and Mom saying, let's help by writing a letter to the judge, or his attorney saying this might help." (*Id.*)

9

Kidd argues that if counsel had disclosed the letter earlier and deposed E.B., he could have impeached E.B.'s credibility. The state court reasonably denied Kidd's claim of ineffective assistance of counsel. The state trial court found, as a matter of Florida law, that the hearsay exception for prior inconsistent statement did not apply to E.B.'s letter and that the letter, therefore, could not be used for impeachment. To the extent that the denial of Kidd's postconviction claim rests on the state court's application of state law, this Court must defer to the state court's decision. *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Furthermore, Kidd has not shown that the state court's ruling concerning this hearsay exception would have been favorable to him had counsel performed differently before trial.

Moreover, even if counsel had been able to use the letter in cross-examining E.B., Kidd has not shown a reasonable probability that the trial's outcome would have been different. E.B. was an adult when she testified at trial. (*Id.*, p. 172.) She testified that Kidd sexually battered her when she was under the age of twelve and explained that, at that time, she was afraid of what would happen if she told anyone. (*Id.*, pp. 175-79.) When E.B. wrote the letter asking for Kidd's release, she had not yet disclosed Kidd's sexual battery. And as the state court suggested, the similar letters from E.B.'s sisters could be taken to suggest that external factors impacted E.B.'s decision to write the letter. Under these circumstances, and considering the State's overall evidence

10

of guilt, Kidd has not shown a reasonable probability of a different outcome had counsel performed differently regarding E.B.'s letter.

### 3. B.B.'s Letter

Like E.B., B.B. wrote a letter to a New Hampshire judge asking for Kidd's release. This letter contained no legible date, but neither party disagreed when the state trial court judge suggested that it "may be the same time frame as" E.B.'s November 2004 letter. (*Id.*, p. 191.) After the state trial court's ruling on E.B.'s letter, counsel did not attempt to impeach B.B. with her letter. (*Id.*, pp. 296-99, 307-08.) In his petition, Kidd asserts that counsel was ineffective for failing to disclose this letter earlier so it could be used for impeachment.

Kidd has not shown that the state trial court would have made a different evidentiary ruling had counsel provided the letter earlier. Nor has he demonstrated a reasonable probability that the outcome of the trial would have been different even if B.B.'s credibility had been impeached by cross-examining her about the letter. E.B. was the only victim listed in the charging document. As stated, the jury heard E.B.'s testimony describing Kidd's sexual battery of her and explaining why she did not come forward sooner. Kidd is not entitled to relief based on ineffective assistance of counsel regarding B.B.'s letter.

11

### 4. Letters Between E.B.'s Mother and Kidd

Counsel sought to cross-examine E.B.'s mother about letters she and Kidd wrote each other. Counsel asserted that the timing of these letters supported Kidd's fabrication defense. The first letter was written from E.B.'s mother to Kidd on August 15, 2005. (Doc. 40-2, Ex. 15, pp. 194-95.) E.B.'s mother expressed a willingness to reconcile after Kidd's child was born and wanted assurance that Kidd loved her. (*Id*.) The second letter was from Kidd to E.B.'s mother, dated August 21, 2005. (*Id*.) In that letter, Kidd told E.B.'s mother that he was ending their marriage. (*Id*.) E.B.'s mother wrote in response at the bottom of the letter, "Don't flatter yourself. I want a divorce. You screwed me out of six years of my life." (*Id*.)

During E.B.'s mother's testimony, the state trial court ruled that the letters could not be used for impeachment because they were not inconsistent with her testimony. (*Id*., pp. 272-73.) But the state court allowed counsel to use the letters to establish dates and a timeline. (*Id*., p. 272.) Counsel elicited testimony that E.B.'s mother learned about Kidd's child in late July or early August of 2005, and that this news upset her. (*Id*., p. 233.) E.B.'s mother could not recall particular dates but agreed that she "may have" learned of Kidd's child shortly before E.B. accused Kidd of sexually battering her. (*Id*.)

Although counsel was not able to use the letters as extensively as she had anticipated, counsel still presented key components of Kidd's fabrication

12

defense. The jury heard that E.B.'s mother learned about Kidd's child in late July or early August 2005 and became upset, and that the topic of divorce came up in the August 2005 letters between Kidd and E.B.'s mother. Other evidence showed that the Department of Children and Families investigation was underway a short time later, by September 2005. (*Id.*, p. 283.) Counsel relied on such evidence in arguing to the jury that E.B.'s claims were false and were intended as retribution for Kidd's having a child with a friend of E.B.'s mother. (Doc. 40-2, Ex. 15, pp. 511-15, 519-21, 524-27.)

In light of these circumstances, the state court reasonably denied Kidd's ineffective assistance claim. Kidd has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in ruling that counsel was not ineffective in her use of the letters to prepare and present a defense. Kidd is not entitled to relief on Ground One.

### B. Ground Two

Kidd argues that the state trial court violated his federal rights to due process and a fair trial by excluding evidence about the same letters addressed in Ground One. Respondent argues that this claim is not cognizable on federal habeas review because it goes to the weight of the evidence. Respondent's argument is not persuasive. Although federal habeas review of a state court's evidentiary ruling necessarily involves considering whether the exclusion of

13

evidence had a substantial and injurious effect on the verdict, this analysis does not impact the cognizability of such a claim.

However, the scope of federal habeas review "is severely restricted." *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983). "Federal courts reviewing habeas corpus petitions are not empowered to correct erroneous evidence rulings of state trial courts." *Smith v. Newsome*, 876 F.2d 1461, 1468 n.8 (11th Cir. 1989) (citation omitted). Thus, even an erroneous state evidentiary ruling, without more, will not provide federal habeas relief. *See Shaw*, 695 F.2d at 530 ("A state evidentiary violation in and of itself does not support habeas corpus relief.").

An error of state evidentiary law warrants federal habeas relief only when the error renders the proceeding fundamentally unfair. *See Payne v. Tennessee*, 501 U.S. 808, 825 (1991). "[T]o render a state-court proceeding fundamentally unfair, the excluded evidence must be material in the sense of a crucial, critical, highly significant factor." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1296 (11th Cir. 2014); *see also Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (explaining that to obtain federal habeas relief based on an error in a state court proceeding, a petitioner must show that the error "had substantial and injurious effect or influence in determining the jury's verdict").

Kidd has not shown that the exclusion of evidence about the letters rendered his trial fundamentally unfair. He has not identified any factual

14

inconsistencies between the 2004 letters and the trial testimony of E.B. and B.B. that may have affected these witnesses' credibility. And counsel cross-examined E.B.'s mother regarding her 2005 correspondence with Kidd. As addressed, counsel elicited information that she used in closing arguments to assert that the short period between the time E.B.'s mother learned of Kidd's other child and the date E.B. disclosed the sexual battery suggested that E.B.'s accusations were untrue.

Kidd fails to show that the exclusion of evidence about the letters had a substantial and injurious effect or influence on the verdict. Because he has not met the heavy burden of showing that an error of state evidentiary law rendered his trial fundamentally unfair, Kidd is not entitled to federal habeas relief on Ground Two.

### C. Ground Three

Kidd contends that the state trial court violated his federal due process rights by allowing the State to introduce the collateral testimony of A.H. and B.B. and the child hearsay testimony of E.B. through her mother, B.B., and her interview. Respondent argues that Ground Three is unexhausted because Kidd failed to present the federal nature of his claim to the state court. A liberal interpretation of Kidd's appellate brief shows that he fairly presented a federal due process claim on appeal. (Doc. 40-2, Ex. 5, pp. 8-11, 18-20.) Therefore, Kidd

15

exhausted his federal due process claim in state court. But Kidd has not shown that the state court's denial of the claim was unreasonable.[4]

Kidd asserts that the state trial court violated his federal rights by permitting B.B. and A.H.'s testimony that Kidd had abused them. This testimony was admitted under Florida's *Williams* rule, which "allows the State to introduce similar fact evidence of other crimes or acts by the defendant to prove a relevant matter in the prosecution for which he or she is on trial." *Newby v. State*, 272 So.3d 862, 869 (Fla. 2d DCA 2019) (citing *Williams v. State*, 110 So.2d 654 (Fla. 1959)).

Kidd has not shown that this state evidentiary ruling rendered the trial fundamentally unfair. Even if it was an error under Florida law to admit the collateral testimony, any error was harmless. The jury still would have heard E.B.'s unequivocal testimony that Kidd touched her vagina under her clothes when she was under the age of 12 years. The jury also would have heard that E.B. was afraid to disclose the incidents at the time, but later told her mother and sister. Additionally, the jury still would have had the opportunity to evaluate E.B.'s statements and demeanor during her videotaped forensic interview from September 2005, shortly after she accused Kidd of sexually

---

[4] The heading of Ground Three refers to a double jeopardy violation. Kidd does not present any argument about double jeopardy or refer to it again. Kidd has not shown that the state courts unreasonably denied any federal double jeopardy claim that was fairly presented to them.

battering her. Kidd has not shown that the introduction of collateral evidence testimony had a substantial and injurious effect on the verdict.

As part of his argument about collateral evidence testimony, Kidd alleges that the successor state court trial judge violated his rights by vacating the original judge's order excluding B.B. and A.H.'s testimony as unduly prejudicial. But Kidd has not identified any clearly established federal law holding that a successor trial judge's order vacating a prior trial judge's evidentiary ruling amounts to a federal due process violation. *See, e.g.*, *Tech. Res. Servs., Inc. v. Dornier Med. Sys., Inc.*, 134 F.3d 1458, 1465 n.9 (11th Cir. 1998) (stating that a successor federal district judge is not bound by the first district judge's rulings and may reconsider the first judge's rulings if final judgment has not been entered).

Kidd also asserts that the state trial court erred in allowing child hearsay testimony of E.B. But Kidd does not elaborate on his claim or explain how the introduction of child hearsay violated his federal due process rights. A federal habeas petitioner must present "fact pleading," not "notice pleading." *Borden v. Allen*, 646 F.3d 785, 809-10 (11th Cir. 2011); *see also* Rule 2(c), Rules Governing Section 2254 Cases in the United States District Courts (stating that a petition must state the facts supporting each ground for relief). Kidd has not shown that the state courts' rejection of any federal claim based on the introduction of child hearsay was contrary to or involved an unreasonable

17

application of clearly established federal law or was based on an unreasonable factual determination. Ground Three does not warrant federal habeas relief.

### Certificate of Appealability

Kidd is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). The district court or circuit court of appeals must first issue a certificate of appealability. To obtain a certificate of appealability, Kidd must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Kidd has not made the requisite showing. A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Kidd must obtain permission from the circuit court to appeal *in forma pauperis*.

Accordingly, Kidd's Amended Petition for Writ of Habeas Corpus (Doc. 38) is **DENIED**. The **CLERK** is directed to enter judgment against Kidd and to **CLOSE** this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 15th day of July, 2026.

_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

18